# IN THE UNITED STATES DISCTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN SHORES,             )
                                     )
           Petitioner,       )
                                     )
         v.                  )           No. 17 C 2723
                                     )           Hon. Marvin E. Aspen
RANDY PFISTER,        )
                                     )
          Respondent.     )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Presently before us is John Shores' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Habeas Pet. (Dkt. No. 1).)  Also before us is Shores' motion for appointment of counsel.  (Dkt. No. 11.)  For the reasons set forth below, we deny Shores' petition and his motion.

## BACKGROUND AND PROCEDURAL HISTORY

### I.   Shores' Trial and Conviction

Shores' habeas claims stem from a 2004 first degree murder conviction involving the shooting death of Ian Thorne.  According to the State's evidence at trial, Deria Gaitors told Shores and Ramone Samuels she was involved in a fraud scheme with Thorne and knew he kept between $50,000 and $100,000 in cash in his home in Riverdale, Illinois.  (Direct Appeal Order, State Ct. R., Ex. H (Dkt. No. 21–8) at 2–3.)  Gaitors had a falling out with Thorne and engaged Shores and Samuels in a plan to steal the money from Thorne's residence.  (*Id.*)  Gaitors did not participate, but she testified she saw Shores and Samuels on December 12, 2001 dressed in black, preparing for the crime.  (*Id.*)

Samuels also testified for the prosecution. (*Id.*) According to his version of events, he traveled with Shores and Glen Fortier to the victim's house armed with handguns on December 12, 2001, planning to rob the home. (*Id.*) The robbery attempt was thwarted when they learned Thorne was home. (*Id.*) Shores, Samuels, and Fortier then returned to the house on the morning of December 13, 2001 and rang the doorbell. (*Id.*) Samuels testified Thorne answered the door and Shores asked to see a guest. (*Id.*) As Thorne turned to summon the guest, Shores removed his gun and pushed him. (*Id.*) A scuffle ensued, and Shores fired a shot. (*Id.*) Samuels and Fortier disposed of their guns after fleeing the scene and later met at Shores' home, where they concocted a defense for the shooting. (*Id.*) According to Samuels, the three decided to say the victim pulled out a gun and in a skirmish with Shores, the gun discharged. (*Id.* at 3–4.)

Gaitors also testified she saw Shores and Samuels on the afternoon of December 13, 2001, and Shores admitted to shooting Thorne. (*Id.* at 3.) Gaitors and Samuels entered into plea agreements in exchange for their testimony against Shores. *People v. Shores*, 2016 IL App (1st) 133824-U, ¶ 4, *appeal denied*, 60 N.E.3d 880 (Ill. 2016). The terms of the plea agreement provided that the murder charges against them would be dismissed, Gaitors would plead guilty to conspiracy to commit home invasion, Samuels would plead guilty to home invasion, and the State would recommend a sentence of 10 years' imprisonment for each co-defendant. *Id.* Fortier was not charged in the case and did not testify.

Renetta Fonville also testified for the State as an eyewitness to the crime. (Direct Appeal Order at 2.) Fonville was sitting in her car on December 13, 2001 when she observed three men arrive at Thorne's residence and enter Thorne's home. (*Id.*) Seconds later, she heard a "pop" and the witnessed the three men flee the scene. (*Id.*) Fonville located Riverdale Police Officer Jimmy Beatty and reported what she saw. (*Id.*)

The evidence at trial also included Shores' videotaped statement to police. *Shores*, 2016 IL App (1st) 133824-U. Following the crime, Shores left Illinois for Atlanta, Georgia to visit his mother. *Id.* ¶ 9. He was apprehended in Cobb County, Georgia, where he gave a videotaped statement to Cook County assistant state's attorneys. *Id.* ¶ 11. In his statement, Shores admitted he participated with Gaitors, Samuels, and Fortier in a plan to steal Thorne's money. *Id.* According to Shores, on December 13, 2001, he rang Thorne's doorbell and stepped inside when Thorne answered the door. *Id.* Thorne then produced a gun. *Id.* Shores stated the gun discharged in the subsequent struggle. *Id.* He fled the scene with the gun and later disposed of it. *Id.*

During the jury instruction conference, Shores requested that a second degree murder instruction be tendered to the jury. (Direct Appeal Order at 4.) Shores also requested an instruction to the jury that inconsistencies in the statements of Gaitors and Fonville be considered substantive evidence and not just impeachment material. (*Id.*) The trial court denied both requests. (*Id.*) A Cook County, Illinois jury found Shores guilty of first degree murder. (*Id.* at 1.) The jury also found Shores personally discharged the firearm that proximately caused the death of the victim. (*Id.*) The court imposed a sentence of 55 years imprisonment. (*Id.*)

## II. Motion for New Trial

Prior to sentencing, Shores filed a motion for a new trial before the trial judge. (Mot. for New Trial, State Ct. R., Ex. A (Dkt. No. 21–1) at 136–38.) In it, he argued the guilty verdict should be set aside and he should receive a new trial because the trial court erred: (1) in denying a motion for substitution of judges as untimely; (2) in not tendering to the jury his proposed second degree murder jury instruction; and (3) in instructing the jury that the inconsistencies in

the testimony of Gaitors and Fonville should be considered solely for impeachment purposes and not as substantive evidence. (*Id.*)

On November 30, 2004, through new counsel, Shores filed an amended motion for a new trial incorporating the claims from the original motion for new trial and additionally alleging his trial attorney was ineffective for: (1) failing to call Fortier as a witness, (2) filing the motion for substitution a day late, and (3) failing to obtain a lesser included offense instruction. (State Ct. R., Ex. A. (Dkt. No. 21–1) at 131–55; *see also* Trial Tr., State Ct. R., Ex. D (Dkt. No. 21–4) at 161–96.) Shores attached an affidavit of Fortier, attesting he had been willing to testify that although the men planned a burglary, the victim pulled the gun on Shores first. (Fortier Aff., State Ct. R., Ex. A (Dkt. No. 21–1) at 132–34.) Fortier asserted he would have testified consistent with Shores' confession that there was a brief scuffle, and Thorne's gun discharged. (*Id.*) The trial court denied the motion. (Trial Tr. at 183–96.)

## III. Direct Appeal

Shores appealed his conviction to the Illinois Appellate Court. Shores raised four claims on appeal, arguing the trial court erred: (1) in denying Shores' request for a second degree murder instruction; (2) by refusing to grant an evidentiary hearing, or in the alternative, an order for a new trial based on Shores' claim of ineffective assistance of trial counsel; (3) in failing to instruct the jury that impeaching testimony could not be considered substantive evidence; and (4) in denying Shores' motion for a new trial. (Direct Appeal Order at 1–2.) The Illinois Appellate Court rejected Shores' claims and affirmed the conviction on August 24, 2006. (*Id.* at 20.) Shores filed a timely petition for leave to appeal ("PLA") to the Illinois Supreme Court. (Direct Appeal PLA, State Ct. R., Ex. I (Dkt. No. 21–9).) The PLA was denied on November 29, 2006. (Direct Appeal PLA Order, State Ct. R., Ex. J (Dkt. No. 21–10).)

## IV.    State Post-Conviction Proceedings

Shores then filed a *pro se* post-conviction petition on June 4, 2007, arguing his due process rights were violated under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  (*Pro Se* Post-Conviction Pet., State Ct. R., Ex. K (Dkt. No. 21–11).) He raised several constitutional claims, alleging: (1) the prosecution committed misconduct when it knowingly used perjured testimony of Gaitors and Samuels and held Shores in custody after a warrantless arrest for more than a month before he was indicted; (2) he was denied effective assistance of counsel because his trial counsel failed to call Fortier to testify as a defense witness; (3) the trial court erred in sentencing Shores to 55 years of "imprisonment at 100%"; and (4) his appellate counsel was ineffective for failing to raise prosecutorial misconduct, ineffective assistance of trial counsel, or trial court sentencing error on direct appeal. (*Id.* at 11–20.)

On August 3, 2007, the circuit court appointed the Cook County Public Defender to represent Shores in connection with his post-conviction petition.  (State Ct. R., Ex. K (Dkt. No. 21–11) at 51.)  Appointed counsel "did not believe that any of Petitioner's contentions were meritorious, and for that reason she would not be supplementing Petitioner's *pro se* Petition."  (Suppl. Post-Conviction Pet., State Ct. R., Ex. L (Dkt. No. 21–12) at 5.)  On March 1, 2013, Shores retained private counsel and filed a supplemental post-conviction petition pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122–1, *et seq.*, and the Illinois Civil Practices Act, 702 ILCS 5/2–1401.  (*Id.* at 2; Suppl. Post-Conviction Mem., State Ct. R., Ex. K (Dkt. No. 21–11) at 58–65.)  Shores' counsel moved to strike all of the claims in Shores' *pro se* post-conviction petition, stating the petition was "essentially[] incoherent," and requested

the supplemental post-conviction petition "claims of extreme merit [be] substituted and advanced exclusively, on defendant's behalf." (Suppl. Post-Conviction Pet. at 6.)

The supplemental petition and memorandum asserted one claim: the State violated Shores' due process rights under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). (*Id.*) The petition also requested an evidentiary hearing, arguing the claim was based in part on matters outside the record. (*Id.* at 3, 6, 24.) Shores argued the State withheld material, exculpatory evidence, including undisclosed benefits and expectations of leniency conferred to Samuels in exchange for his testimony against Shores. (*Id.* at 7.) Specifically, Shores alleged that the prosecution withheld evidence that after co-defendant Samuels reached a plea deal, he was twice permitted to leave jail to participate in the Cook County Sheriff's "Scared Straight" program, which allows inmates to address high school students about the consequences of committing crimes. (*Id.* at 5.) At sentencing, Samuels used his participation in the Scared Straight program to argue for a reduced sentence—a successful effort, as he was sentenced to eight years imprisonment, which was two years less than the plea agreement disclosed to Shores. (*Id.* at 5–6.) Shores argued that representations made to the jury regarding Samuels' plea agreement were therefore false, and the jury was never told that the prosecution permitted Samuels to depart from custody to give speeches to the public or that Samuels used his undisclosed participation in the Scared Straight program to receive a sentence lower than the 10 years set forth in the plea agreement. (*Id.* at 23–24.)

The State moved to dismiss the supplemental petition on May 17, 2013. (Mot. to Dismiss, State Ct. R., Ex. K (Dkt. No. 21–11) at 66–78.) The State argued the § 2–1401 petition was untimely, as it was filed more than nine years after the expiration of the two-year statute of limitations set forth in § 2–1401(c). (*Id.* at 69.) The State also argued that Shores' *Brady* claim

failed on the merits because the allegedly withheld evidence was neither exculpatory nor impeachment evidence, it was not suppressed by the State, and no prejudice ensued as the information was not material. The trial court held a hearing on the motion to dismiss on September 6, 2013. (Hrg. Tr., State Ct. R., Ex. O (Dkt. No. 21–15) at 24–39.) The trial court denied post-conviction relief in an oral ruling. (Post-Conviction Order, State Ct. R., Ex. O (Dkt. No. 21–15) at 44–53.) Shores raised the *Brady* claim on post-conviction appeal, but the appellate court affirmed on March 31, 2016. (Post-Conviction Appeal Br., State Ct. R., Ex. P (Dkt. No. 21–16); Post-Conviction Appeal Order, State Ct. R., Ex. T (Dkt. No. 21–20).) Shores filed a post-conviction PLA, which was denied on September 28, 2016. (Post-Conviction PLA, State Ct. R., Ex. U (Dkt. No. 21–21); Post-Conviction PLA Order, State Ct. R., Ex. V (Dkt. No. 21–22).)

## V.     Federal Habeas Petition

Shores filed a timely federal habeas petition on April 10, 2017, asserting eight grounds for relief:

(1)     Trial counsel was ineffective for failing to call Fortier as a witness;

(2)     The trial court improperly refused to give jury instructions for second degree murder and involuntary manslaughter;

(3)     The trial court improperly refused to grant Shores a hearing on the ineffective assistance of counsel claim raised in his post-trial motion;

(4)     The State violated *Brady v. Maryland* and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763 by failing to disclose impeachment evidence;

(5)     The State knowingly used perjured testimony to obtain a conviction;

(6)     The evidence failed to establish Shores' guilt beyond a reasonable doubt;

(7)     Post-trial counsel was ineffective for failing to assert additional allegations of ineffectiveness against trial counsel, for failing to attach certain evidence to the post-trial motion, and for failing to "federalize the issues raised in the post-trial motion; and

(8)     Appellate counsel was ineffective for failing to raise certain arguments on direct appeal.

(Habeas Pet. at 7–97.)  The State filed a response brief, arguing Shores' habeas petition should be dismissed on several grounds.  (Resp. (Dkt. No. 20).)  The State argues Claims One and Four are meritless, Claims Two and Three are "noncognizable and defaulted," and Claims Five through Eight are procedurally defaulted because Shores never fairly presented them to the state courts.  (*Id.* at 8–15.)  In addition, Shores filed a motion for appointment of counsel, to which the State filed an opposition brief.  (Dkt. Nos. 11, 13.)

## STANDARD OF REVIEW

To obtain habeas relief, a petitioner in state custody must establish that his state conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 480 (1991).  Our review is guided by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  *Hall v. Zenk*, 692 F.3d 793, 797 (7th Cir. 2012).  Under AEDPA, a habeas petitioner must establish the proceedings in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or that (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 363, 404–05, 120 S. Ct. 1495, 1519 (2000); *Morgan v. Hardy*, 662 F.3d 790, 797 (7th Cir. 2011).

First, a state court's decision is contrary to clearly established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [it]."  *Williams*,

529 U.S. at 405, 120 S. Ct. at 1519; *see also Morgan*, 662 F.3d at 797; *Woods v. McBride*, 430 F.3d 813, 816–17 (7th Cir. 2005).

Second, a state court's decision is an "unreasonable application" of clearly established Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of a particular prisoner's case," or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407–08, 120 S. Ct. at 1521; *Morgan*, 662 F.3d at 797. A state court's application of Supreme Court precedent must be more than incorrect or erroneous; it must be "objectively" unreasonable. *Williams*, 529 U.S. at 410, 120 S. Ct. at 1522 ("[A] federal habeas court may not issue the writ simply because that court concludes . . . that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."); *see also Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 785 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision."). Under this standard, to be unreasonable, the decision of the state court must lie "well outside the boundaries of permissible differences of opinion." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) (quoting *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002)); *see also Henderson v. Briely*, 354 F.3d 907, 909 (7th Cir. 2004) ("[T]he question before a federal court on collateral review . . . is only whether the state court's decision was so far out-of-bounds as to be 'unreasonable.'").

On habeas review, determinations of factual issues made by a state court are presumed correct, and the petitioner bears the burden of rebutting this presumption with clear and

convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003).

## ANALYSIS

## I.    DEFAULTED AND NON-COGNIZABLE CLAIMS

The State argues several of Shores' claims are procedurally defaulted or not cognizable in a federal habeas proceeding.  Before a federal court may review a state conviction, a state prisoner must exhaust available state remedies and avoid procedural default.  *Davila v. Davis*, 582 U.S. ——, 137 S. Ct. 2058, 2064 (2017); *Oaks v. Pfister*, 863 F.3d 723, 726 (7th Cir. 2017).  "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'"  *Davila*, 137 S. Ct. at 2064 (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S. Ct. 1198, 1203 (1982)); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004).  To properly exhaust state court remedies, the petitioner must "fairly present" his constitutional claims in one complete round of state review.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732–33 (1999); *Oaks*, 863 F.3d at 726; *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010) ("[A] petitioner must have fairly presented both the operative facts and legal principles that control each claim to the state judiciary.").  "[I]f the claim comes from the Illinois state courts, the petitioner must have presented each claim in the habeas petition to the Illinois Appellate Court and to the Illinois Supreme Court in a petition for discretionary review."  *Smith*, 598 F.3d at 382 (citing *Boerckel*, 526 U.S. at 844–45, 119 S. Ct. at 1732–33); *accord Mulero v. Thompson*, 668 F.3d 529, 536 (7th Cir. 2012).

Likewise, a federal court may not review federal claims that were procedurally defaulted in state court, meaning: "(1) that claim was presented to the state courts and the state-court ruling

against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet*, 390 F.3d at 514 (citing *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S. Ct. 2546, 2557 (1991); *Harris v. Reed*, 489 U.S. 255, 263, n.9, 109 S. Ct. 1038, 1043, n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004)); *see also Holmes v. Hardy*, 608 F.3d 963, 967 (7th Cir. 2010) ("A federal court will not review a question of federal law decided by a state court if the decision of the state court clearly and expressly relied on the petitioner's failure to meet a state procedural requirement as an independent basis for its disposition of the case.") When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted. *Boerckel*, 526 U.S. at 853–54, 119 S. Ct. at 1737; *Thompson v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016); *U.S. ex rel. Bruce v. McCann*, 598 F. Supp. 2d 890, 895 (N.D. Ill. 2009).

## A. Claim Two

In Claim Two, Shores argues he was denied a fair trial and his right to due process under the Sixth and Fourteenth Amendments because the trial court refused to instruct the jury on second degree murder or manslaughter. (Habeas Pet. at 19.) Shores argues the state court's refusal to give a requested instruction as to a "recognized defense so infected the entire trial that the resulting conviction violated due process and infringed upon Petitioner's right to a fair trial." (Habeas Pet. at 26; Reply (Dkt. No. 27) at 39.) In response, the State contends: (1) Shores' claim is non-cognizable on federal habeas review because a "state court's error in instructing a jury does not generally present a question of federal law"; (2) the claim has been procedurally defaulted in part; and (3) the claim is barred by § 2254(d)(1) because there is no clearly

established federal right to a second degree murder or manslaughter instruction. (Resp. at 10–11.)

With respect to Shores' manslaughter instruction claim, we agree with the State that the claim is procedurally defaulted. As the State observes, there is no indication in the record that Shores submitted a proposed manslaughter instruction at trial. (Resp. at 11.) Further, he did not pursue the argument either in his direct appeal brief or his direct appeal PLA. (Direct Appeal Br. at 20–24; Direct Appeal PLA at 16–18.) Accordingly, he failed to present the claim through one complete round of appellate review, and he is now procedurally barred from doing so. *Boerckel*, 526 U.S. at 853–54, 119 S. Ct. at 1737; *U.S. ex rel. Bruce*, 598 F. Supp. 2d at 895.

Next, the Illinois Appellate Court dismissed Shores' claim that he was entitled to a second degree murder instruction. (Direct Appeal Order at 5–8.) A person commits second degree murder in Illinois when he commits first degree murder and either of the following mitigating factors are present: "(1) at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed . . . ; or (2) at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing." 720 ILCS 5/9–2(a)(1), (2). The state court held Shores' attorney failed to tender an instruction on second degree murder based on self-defense under 720 ILCS 5/9–2(a)(2), and therefore he waived his claim as to a self-defense instruction. (Direct Appeal Order at 6–7.) Notwithstanding the waiver finding, the state court held Shores was not entitled to a second degree murder instruction based on either self-defense or provocation because he was attempting to perpetrate a robbery at the time of the fatal shooting. (*Id.* at 7–8.) Under Illinois law, a "person who intends to commit a robbery is not allowed to claim provocation by the victim nor raise any other affirmative defense, if, in the course of committing

the original felony, the intended victim or any other person is killed." (Direct Appeal Order at 6 (citing *People v. Williams*, 164 Ill. App. 3d 99, 109, 517 N.E.2d 745, 751 (4th Dist. 1987).) Likewise, the state court found Shores was "precluded by both statute and case law from pleading self-defense in light of his participation in the attempted robbery of the decedent." (*Id.* at 7–8); 720 ILCS 5/7–4(a) (providing a justification defense is not available to a person who "is attempting to commit, committing, or escaping after the commission of, a forcible felony").

In general, "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." *McGuire*, 502 U.S. at 71–72, 112 S. Ct. at 482; *see also Gilmore v. Taylor*, 508 U.S. 333, 342, 113 S. Ct. 2112, 2117 (1993) ("[I]nstructions that [only] contain errors of state law may not form the basis for federal habeas relief."); *Marshall v. Lonberger*, 459 U.S. 422, 438, n.6, 103 S. Ct. 843, 853, n.6 (1983) ("[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules"). A habeas petitioner faces an "especially heavy burden" to prove omission of a jury instruction violated his constitutional right to due process. *Waddington v. Sarausad*, 555 U.S. 179, 190, 129 S. Ct. 823, 831 (2009); *see also Perruquet*, 390 F.3d at 511 ("Because a state trial court's evidentiary rulings and jury instructions turn on state law, these are matters that are usually beyond the scope of federal habeas review."). "Before a federal court may overturn a conviction resulting from a state trial . . . it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973). An error in instructing the jury may warrant habeas relief if it "so infected the entire trial that the resulting conviction violates

due process." *McGuire*, 502 U.S. at 72, 112 S. Ct. at 482 (quoting *Naughten*, 414 U.S. at 147, 94 S. Ct. at 400–01).

We may not overturn the Illinois Appellate Court's determination of state law issues, and Shores fails to point to any constitutional defect in the trial court's refusal to give the requested instruction, nor does his claim clearly implicate his right to a fair trial. *See Waddington*, 555 U.S. at 192 n.5, 129 S. Ct. at 832 ("[W]e have repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'") (quoting *McGuire*, 502 U.S. at 67–68, 112 S. Ct. at 480); *Reeves v. Battles*, 272 F.3d 918, 920 (7th Cir. 2001) ("In general, the failure of a state trial court to instruct the jury on a lesser offense does not implicate a federal constitutional question and will not be considered in a federal habeas corpus proceeding."). Moreover, there is no clearly established Supreme Court precedent for Shores' claim that he was entitled to a jury instruction on second degree murder. *Calloway v. Montgomery*, 512 F.3d 940, 944 (7th Cir. 2008). State trial courts are not constitutionally required to instruct juries on offenses that are not lesser included offenses of the charged crime under state law. *Hopkins v. Reeves*, 524 U.S. 88, 90–91, 118 S. Ct. 1895, 1897 (1998). In Illinois, second degree murder is not a lesser-included offense of first degree murder, but "is more accurately described as a *lesser-mitigated offense* of first degree murder." *People v. Wilmington*, 2013 IL 112938, ¶ 48, 983 N.E.2d 1015, 1026 (Ill. 2013). Accordingly, Shores was not constitutionally entitled to a second degree murder instruction. *See*, *e.g.*, *Bajdo v. Butler*, No. 11 C 1091, 2015 WL 1427786, at *7 (N.D. Ill. Mar. 24, 2015); *United States ex rel. Leyva v. Walls*, 230 F. Supp. 2d 847, 854–55 (N.D. Ill. 2002). For all of the above reasons, Shores' claim is not cognizable on federal habeas review. *McGuire*, 502 U.S. at 68, 112 S. Ct. at 480.

### B. Claims Five through Eight

The State argues it is undisputed Shores never presented Claims Five through Eight to the state courts, and the lack of fair presentment means the claims are now procedurally defaulted. (Resp. at 13–14; *see also* Habeas Pet. at 96–97.)  In Claim Five, Shores argues he was denied due process and a fair trial because the State knowingly used perjured testimony to convict him. (*See* Habeas Pet. at 42.)  Claim Six also asserts that the State knowingly used the perjured testimony of Samuels and Gaitors, and that without their perjured testimony, there was insufficient evidence to convict.  (*Id.* at 64.)  In Claim Seven, Shores argues his post-trial attorney provided ineffective assistance for failing to raise additional arguments in support of his claim that his trial counsel was ineffective.  (*Id.* at 75.)  Shores also argues he received ineffective assistance of appellate counsel in Claim Eight, contending his appointed appellate counsel failed to raise several issues on direct appeal.  (*Id.* at 86.)

Shores concedes he failed to bring these claims before the state courts.  Nevertheless, Shores argues he can establish cause and prejudice, as his various attorneys were ineffective for failing to raise these claims before the trial court or on appeal.  (Habeas Pet. at 60, 96–97.)  He further asserts his attorneys' deficient representation substantially prejudiced him because there is a reasonable probability that but for the unprofessional errors in failing to raise the claims, the outcome of his trial would have been different.  (*Id.*)

When a habeas petitioner fails to fairly present his claim to the state courts and the opportunity to raise that claim has now passed, the claim is procedurally defaulted.  *Boerckel*, 526 U.S. at 853–54, 119 S. Ct. at 1737; *U.S. ex rel. Bruce*, 598 F. Supp. 2d at 895.  "A petitioner can overcome a procedural default if he can establish cause for and prejudice from the default." *Oaks*, 863 F.3d at 726 (citing *Davila*, 137 S. Ct. at 2064–65; *Coleman*, 501 U.S. at 750,

111 S. Ct. at 2565); *accord Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). For example, "[c]onstitutionally ineffective assistance of counsel can excuse a procedural default." *Oaks*, 863 F.3d at 726 (citing *Davila*, 137 S. Ct. at 2065 ("It has long been the rule that attorney error is an objective external factor providing cause for excusing a procedural default only if that error amounted to a deprivation of the constitutional right to counsel.")). "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000) (internal citations omitted)); *accord Coleman*, 501 U.S. at 752, 111 S. Ct. at 2566.

However, a petitioner must raise the claim of ineffective assistance of counsel and present it to the state courts "as an independent claim before it may be used to establish cause for a procedural default." *Carpenter*, 529 U.S. at 451, 120 S. Ct. at 1591 (quoting *Murray v. Carrier*, 477 U.S. 478, 490–492, 106 S. Ct. 2639, 2646–47 (1986)). Here, Shores failed to do so. He attempted to raise all four claims in his *pro se* post-conviction petition, but the claims were not raised by counsel in his supplemental post-conviction petition. (Suppl. Post-Conviction Pet. at 11–20; Habeas Reply (Dkt. No. 28) at 57–58.) Rather, Shores' counsel moved to strike the *pro se* post-conviction petition, stating the supplemental petition was "substituted and advanced exclusively, on defendant's behalf." (*Id.* at 6.) Because "Illinois treats claims that have been raised in a *pro se* petition but not in a petition amended by counsel as 'not before the court,'" the claims raised in Shores' *pro se* petition were supplanted by the sole *Brady* claim raised in his supplemental petition filed by counsel. *Oaks*, 863 F.3d at 727 (quoting *People v. Phelps*, 51 Ill. 2d 35, 38, 280 N.E.2d 203, 204 (Ill. 1972)).

Shores argues his post-conviction counsel's failure to raise the claims and to waive them without his knowledge should excuse the default. (Reply at 58.) Decisions of trial counsel relating to trial strategy, even when made without consulting the defendant, are generally barred on habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 93–94, 97 S. Ct. 2497, 2510 (1977). In any case, Shores cannot raise a claim of ineffective assistance of post-conviction counsel to establish cause and prejudice for the default because he has no constitutional right to post-conviction counsel. *Davila*, 137 S. Ct. at 2062; *Coleman*, 501 U.S. at 756–57, 111 S. Ct. at 2568 (holding "a criminal defendant has no right to counsel beyond his first appeal in pursuing state discretionary or collateral review," and therefore, "any attorney error that led to the default of [the defendant's] claims in state court cannot constitute cause to excuse the default in federal habeas"); *Oaks*, 863 F.3d at 727. A narrow exception exists permitting a federal court to treat "ineffective assistance by a prisoner's state postconviction counsel as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal." *Davila*, 137 S. Ct. at 2062–63 (citing *Martinez v. Ryan*, 566 U.S. 1, 16–17, 132 S. Ct. 1309, 1320 (2012); *Trevino v. Thaler*, 569 U.S. 413, 428–29, 133 S. Ct. 1911, 1921 (2013)). Because ineffective assistance of counsel may be raised on direct appeal in Illinois,[1] the narrow exception does not apply to Shores' claims. *Oaks*, 863 F.3d at 726. Likewise, Shores cannot use ineffective assistance of appellate counsel to

---

[1] Indeed, Shores raised ineffective assistance of trial counsel on his direct appeal. (*See* Direct Appeal Order at 8–13.) However, he argued trial counsel was ineffective based on counsel's failure to timely submit a substitution of judge motion and counsel's failure to call Fortier as a witness. (*Id.* at 8.) That claim, based on a different factual and legal theory, cannot suffice to preserve his current claim, as the state courts have not had a meaningful opportunity to review it. *Johnson v. Hulett*, 574 F.3d 428, 432 (7th Cir. 2009) ("[Petitioner] cannot argue one theory to the state courts and another theory, based on different facts, to the federal court." (citation omitted)).

excuse his default. *Davila*, 137 S. Ct. at 2066–67; *Oaks*, 863 F.3d at 727. Accordingly, his Claims Five, Six, Seven, and Eight are all procedurally defaulted.

## II. MERITS

### A. Claims One and Three

In Claim One, Shores argues the state court unreasonably dismissed his ineffective assistance of counsel claim. (Habeas Pet. at 7.) Shores contends he was denied effective assistance of counsel when his trial attorney "failed to call an available State eyewitness [Fortier] who testified before a Grand Jury that Decedent pulled a gun, a struggle ensued with Petitioner and a shot was heard." (*Id.*) Shores argues Fortier's testimony would have impeached the State's chief witness, Samuels, who testified Shores produced the gun and was the aggressor. (*Id.*) Shores also argues that the jury may have believed Fortier over Samuels, as Fortier had not been charged with a crime and was not testifying in exchange for a sentence reduction. (*See* Direct Appeal Br. at 29.) Further, Shores contends Fortier's testimony would have corroborated Shores' videotaped statement as well as testimony indicating it was possible the victim was shot with his own gun. (*Id.* at 29–30.) In addition, Shores asserts in Claim Three that he was entitled to an evidentiary hearing in state court on his post-trial ineffective assistance of counsel claim based on trial counsel's failure to call Fortier as a defense witness. (Habeas Pet. at 26.)

To prevail on an ineffective assistance of counsel claim, a petitioner must prove: (1) counsel's performance "fell below an objective standard of reasonableness" when measured against "prevailing professional norms"; and (2) counsel's errors prejudiced the defendant, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984). A petitioner must show that his

attorney made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 104 S. Ct. at 2064. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91, 104 S. Ct. at 2066; *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 1403 (2011) (emphasizing the need to avoid the temptation to second guess counsel's performance after a conviction). On habeas review, we must defer to the state court's determination that the petitioner received effective assistance of counsel unless that determination is contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97–98, 131 S. Ct. at 783–84. "Thus, under AEDPA, a habeas petitioner must show that the state court's application of *Strickland* was both incorrect and unreasonable—that is, 'lying well outside the boundaries of permissible differences of opinion.'" *Toliver v. McCaughtry*, 539 F.3d 766, 774 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)).

The Illinois Appellate Court denied Shores' claim that his counsel's failure to call Fortier as a defense witness constituted ineffective assistance of counsel. (Direct Appeal Order at 10–11.) Applying the *Strickland* standard, the court found counsel's "decisions to call witnesses are matters of trial strategy and are beyond the scope of appellate review." (*Id.* at 9.) Notwithstanding whether counsel's performance was deficient, the court concluded Shores failed to meet his burden of showing prejudice, because Fortier's proposed testimony actually supported a guilty verdict. (*See* Direct Appeal Order at 10–11.) The court held that had the jury

19

heard Fortier's proposed testimony, they still would have convicted Shores of first degree felony murder because regardless of who pulled the gun first, Shores was "attempting or committing a forcible felony"—namely robbery—when the victim was shot.  (*Id.* (citing 720 ILCS 5/9–1(a)(3)).) [2]  Therefore, the state court held it was "irrelevant" as a matter of state law whether Shores or Thorne first pulled the gun or whether Shores intended to kill Thorne. (*Id.* at 10.)

Shores' argument is premised here, as it was in the state courts, on his contention that Fortier's testimony would have supported a key element of his defense: the killing was not intentional or premeditated, but instead occurred after the victim pulled a weapon first.  (*See* Direct Appeal Br. at 29.)  Consequently, Shores' defense strategy asserted he was not guilty of first degree murder, but a lesser crime.  (*Id.*)  The state court rejected this argument based on its interpretation of state law.  We cannot second guess the state court's determination that sufficient evidence was presented at trial to conclude Shores was committing a robbery at the time Thorne was shot; therefore, Fortier's testimony would not have made a difference in the outcome of the trial as Shores could still have been convicted of first degree felony murder under 720 ILCS 5/9–1(a)(3).  *Waddington*, 555 U.S. at 192 n.5, 129 S. Ct. at 832; *Ruhl*, 743 F.3d at 1098; *Perruquet*, 390 F.3d at 511–12.  As set forth above, "[a] federal court cannot disagree with a state court's resolution of an issue of state law."  *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) (citing *Bradshaw v. Richey*, 546 U.S. 74, 126 S. Ct. 602 (2005); *McGuire*, 502 U.S. 62, 112 S. Ct. 475); *see also Shaw v. Wilson*, 721 F.3d 908, 914

---

[2] A person commits first degree murder under Illinois law if he "kills an individual without lawful justification" and where "in performing the acts which cause the death: (1) he either intends to kill or do great bodily harm to that individual or another . . . ; or (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another; or (3) he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9–1(a)(1)–(3).

(7th Cir. 2013). Neither in the state court nor in his habeas petition has Shores advanced a claim that Fortier's testimony would have refuted a felony murder conviction. To the contrary, Fortier's affidavit stated it was his "understanding that a burglary was planned" and Shores took the position on direct appeal that "the record is clear that the purpose of [Shores'] conduct was robbery." (Habeas Pet. at 12; Direct Appeal Reply, State Ct. R., Ex. G (Dkt. No. 21–7) at 8.) While an ineffective assistance of counsel claim "can be premised on an attorney's failure to raise state-law issues, federal courts reviewing such claims must defer to state-court precedent concerning the questions of state law underlying the defendant's ineffectiveness claim." *Shaw*, 721 F.3d at 914. Accordingly, Claim One is denied.

With respect to Claim Three, because the state court reasonably rejected Shores' underlying ineffective assistance claim on the merits based on the record before it, its determination that Shores was not entitled to an evidentiary hearing was likewise not an unreasonable application of clearly established federal law. Moreover, we may not consider Shores' claim that the failure of the Illinois courts to conduct an evidentiary hearing violated his Fourteenth Amendment rights, as only a violation of state law is alleged. *McGuire*, 502 U.S. at 67–68, 112 S. Ct. at 480; *see also*, *e.g.*, *U.S. ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1096 (N.D. Ill. 1999) (denying separate claim that the state court failed to hold an evidentiary hearing, finding it solely involved questions of state law and procedure and did not affect petitioner's constitutional rights). Therefore, Claim Three is also denied.

### B. Claim Four

In Claim Four, Shores argues the State withheld impeachment evidence in violation of *Brady v. Maryland* and *Giglio v. United States* and denied him his right to due process and a fair trial under the Sixth and Fourteenth Amendments to the Constitution. (Habeas Pet. at 32.)

Shores raised his *Brady* claim in the state courts in his supplemental post-conviction petition and § 2–1401 petition, arguing the State withheld evidence: (1) that Samuels was permitted to leave jail prior to Shores' trial to give speeches to the public through the Scared Straight program, and (2) Samuels used his participation in the program to argue for a departure from the 10-year sentence recommended in the plea agreement. (Habeas Pet. at 35–36.) Samuels testified that he expected a 10-year sentence, but Shores argues had he known that Samuels expected additional benefits and leniency, Shores could have used the undisclosed information "as powerful impeachment material" when Samuels took the stand. (Habeas Pet. at 36–38.)

Pursuant to *Brady*, the prosecution has an affirmative duty to disclose to a criminal defendant "any evidence favorable to an accused which is material either to guilt or to punishment." 373 U.S. at 87–88, 83 S. Ct. at 1197; *accord Giglio*, 405 U.S. at 154, 92 S. Ct. at 766 ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule."). "*Brady*'s disclosure requirements extend to materials that, whatever their other characteristics, may be used to impeach a witness." *Strickler v. Greene*, 527 U.S. 263, 282, n.21, 119 S. Ct. 1936, 1948–49, n.21 (1999) (citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380 (1985)). "The suppression of such evidence deprives the defendant of a fair trial and thus violates due process." *Boss v. Pierce*, 263 F.3d 734, 740 (7th Cir. 2001) (citing *Brady*, 373 U.S. at 86–87, 83 S. Ct. at 1196).

To establish a *Brady* violation, a petitioner must first prove that the prosecution "failed to give him evidence favorable to his defense, that would tend to show his innocence, or that could be used to impeach witnesses at trial." *Morgan*, 662 F.3d at 800 (citing *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196–97)). Second, a petitioner must show that the evidence was material, meaning

"there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682, 105 S. Ct. at 3383. "The reasonable probability standard for materiality of suppressed evidence is less rigorous than a preponderance of the evidence standard in that a petitioner need only show that the new evidence undermines confidence in the verdict." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995)); *accord Jardine v. Dittmann*, 658 F.3d 772, 776–77 (7th Cir. 2011) ("But not all suppressed evidence that has some tendency to exculpate or impeach is material under *Brady*, and relief may be granted only if introducing the evidence would have cast "'the whole case in such a different light as to undermine confidence in the verdict.'" (quoting *Greene*, 527 U.S. at 290, 119 S. Ct. at 1952)).

Where the prosecution provides a tacit or express agreement to provide a witness benefits, it may "be used by a cross-examining defense counsel to undermine the witness," and generally must be disclosed to the defense. *Wisehart v. Davis*, 408 F.3d 321, 323 (7th Cir. 2005). However, the Illinois Appellate Court concluded as a factual matter that the State did not promise Samuels or otherwise encourage him to expect that his participation in the Scared Straight program would result in a reduction in his recommended 10-year sentence. *Shores*, 2016 IL App (1st) 133824–U, ¶ 30. To the contrary, the prosecution recommended a 10-year sentence in accordance with the plea agreement at sentencing, arguing Samuels should not get any further "break." *Id.* The court concluded that while Samuels "may have hoped that his participation in the Scared Straight program would work to his advantage in sentencing, . . . there is no evidence of an agreement to that effect." *Id.* ¶ 39. Shores has failed to set forth any evidence showing that an agreement or promise existed between the State and Samuels for a reduced sentence. *See*, *e.g.*, *Wisehart*, 408 F.3d at 324 (explaining a witness' expectation of

leniency is not the same as an agreement for leniency, and does not require disclosure under *Brady*); *Snow v. Pfister*, 240 F. Supp. 3d 854, 884–85 (N.D. Ill. 2016) (finding insufficient to establish a *Brady* claim the fact that a cooperating witness merely received favorable treatment from the State). The finding by the state court that there was no agreement, and thus no suppressed *Brady* material, has not been rebutted by "clear and convincing evidence," and is therefore binding. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340, 123 S. Ct. at 1041("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)."). Accordingly, Shores' claim must be denied.

Shores' claim falls short for an additional reason. The appellate court alternatively concluded the allegedly withheld evidence was not material, as disclosure of Samuels' participation in the Scared Straight program would not have produced a different result at trial. *Shores*, 2016 IL App (1st) 133824–U, ¶ 32. Samuels testified that he participated in the events leading up to the victim's death, acknowledged his testimony against Shores was obtained via his plea agreement, and told the jury the details of that agreement. *Id.* ¶ 35. The Illinois Appellate Court concluded the additional impeachment material would therefore have been cumulative. *Id.* We cannot say the state court's determination was an unreasonable application of *Brady*. *Williams*, 529 U.S. at 407–08, 120 S. Ct. at 1521; *Morgan*, 662 F.3d at 797. The state court correctly articulated the law with respect to the disclosure of *Brady* evidence and concluded Shores failed to show a substantial violation of his constitutional rights. The state court reasonably found the additional impeachment evidence was not material because it was not the

only or most potent evidence of impeachment against Samuels, and the importance of Samuels'

testimony "fades in light of Ms. Gaitors' testimony that the defendant admitted shooting the

victim." *Shores*, 2016 IL App (1st) 133824–U, ¶ 38. *See Socha v. Richardson*,

874 F.3d 983, 989 (7th Cir. 2017) (finding additional impeachment evidence withheld by the

state not material, particularly when the witness' credibility was already impugned and the

witness was not the only one to testify as to the defendant's participation in the crime). Because

the Illinois Appellate Court's ruling did not involve a determination that was contrary to, or an

unreasonable application of, clearly established Supreme Court precedent, Shores' habeas claim

is without merit. 28 U.S.C. § 2254(d)(1).

## III.     MOTION FOR APPOINTMENT OF COUNSEL

Shores has also filed a motion for attorney representation. There is no right to counsel in

a federal habeas corpus proceeding. *Wright v. West*, 505 U.S. 277, 293, 112 S. Ct. 2482, 2490

(1992); *Pruitt v. Mote*, 503 F.3d 647, 657 (7th Cir. 2007). Counsel must be appointed in habeas

proceedings only if an evidentiary hearing is needed or if the interests of justice so require. *See*

18 U.S.C. § 3006A(a)(2)(B); Rule 8(c), Rules Governing Section 2254 Cases in the United

States District Courts, *available at* http://www.uscourts.gov/rules-policies/current-rules-practice-

procedure. Neither circumstance exists here. For the reasons stated herein, Shores is not entitled

to an evidentiary hearing on his claims. Moreover, he competently presented the issues in his

habeas petition and reply brief, and Respondent's answer clearly responded to his arguments.

Accordingly, based on the record before us, the interests of justice do not require appointment of

counsel.

## IV.     CERTIFICATE OF APPEALABILITY

In the event that Shores intends to appeal his decision, we decline to issue a certificate of appealability ("COA"). Pursuant to 28 U.S.C. § 2253(c)(1), a COA is required for an appeal from a final order in a habeas corpus proceeding under 28 U.S.C. § 2254. *See also* Rule 11(a) of the Rules Governing § 2254 Cases ("The district court must issue or deny a [COA] when it enters a final order adverse to the applicant."). We may grant a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Miller-El*, 537 U.S. at 327, 123 S. Ct. at 1034; *Walker v. O'Brien*, 216 F.3d 626, 631–32 (7th Cir. 2000). To show that his constitutional rights have been denied, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong," or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603–04 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S. Ct. 3383, 3395 (1983)). For claims dismissed on procedural grounds, a district court should issue a COA only "when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

Here, reasonable jurists could not debate our conclusion with respect to Shores' Claims Two, Three, Five, Six, Seven, and Eight, which we have dismissed due to procedural default or because they are not cognizable on federal habeas review. To reach the merits of these defaulted claims would undermine the procedural protection in place for ensuring a federal court's deference to state court proceedings. *Murray v. Carrier*, 477 U.S. 478, 489, 106 S. Ct. 2639, 2646 (1986). Additionally, no reasonable jurist could disagree with our analysis

on the merits of Shores' ineffective assistance of counsel (Claim One) or *Brady* (Claim Two)

claims. Accordingly, Petitioner has not made the necessary substantial showing of the denial of

a constitutional right for us to issue a COA. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604.

## CONCLUSION

For the reasons stated above, we deny Shores' habeas petition and deny of a certificate of

appealability. We also deny Shores' motion for appointment of counsel. It is so ordered.


_____
Marvin E. Aspen
United States District Judge

Dated: January 16, 2018
        Chicago, Illinois